UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

KEITH LEETH,

    Plaintiff,                            Case No. 3:21-cv-132

vs.

SECRETARY OF VETERANS AFFAIRS,     District Judge Michael J. Newman

    Defendant.

**ORDER: (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 22); AND (2) TERMINATING THIS CASE ON THE DOCKET**

Plaintiff Keith Leeth alleges that his former employer, the Chillicothe VA Medical Center ("CVAMC"), discriminated against him based on his sexual orientation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 29 U.S.C. § 621, *et seq*. Leeth, proceeding with the assistance of counsel, filed this lawsuit against the Secretary of Veterans Affairs ("Secretary"). Doc. No. 1. This civil case is before the Court on the Secretary's motion for summary judgment. Doc. No. 22. This motion follows extensive discovery and the Court's suggestion of mediation. Doc. No. 18 at PageID 62. Leeth responded to the motion (Doc. No. 27) and the Secretary replied (Doc. No. 29). At the Court's request, Leeth also filed a supplemental brief. Doc. No. 30. Thus, the motion is ripe for review. For the reasons that follow—including the "same actor" inference—the Court grants the Secretary's motion. Leeth has not shown that there is a genuine dispute of material fact regarding whether his supervisor denied his leave based on his sexual orientation.

                                    **I.     BACKGROUND**

    **A.  Leeth's Employment at CVAMC**

Leeth was hired by CVAMC in July 2019 to work in the Nursing Department. Doc. No. 21-1 at PageID 118. In December 2019, he applied for a Pharmacy Technician position in the Pharmacy

Department. *Id.* He interviewed for the position in January 2020. *Id.* at PageID 118-19. There were multiple members of management at the interview, including Tracy Bower, Wesley Romanello, and Adam Jackson. *Id.* at PageID 119. During the interview, Leeth voluntarily disclosed that he was married to another man. *Id.* at PageID 121; Doc. No. 21-5 at PageID 1072.

After the interview, Leeth accepted an offer for the Pharmacy Technician position. Doc. No. 21-1 at PageID 128. He stopped working in the Nursing Department and started working in the Pharmacy Department in January 2020. Doc. No. 21-2 at PageID 330. Leeth was a probationary employee because he had only been employed by CVAMC for less than one year. Doc. No. 21-1 at PageID 136. At that time, Bower became Leeth's direct supervisor, Romanello became Leeth's second-line supervisor, and Jackson became Leeth's third-line supervisor as the Chief of Pharmacy Service. Doc. No. 21-5 at PageID 1072. Shortly after Leeth began working as a Pharmacy Technician, Jackson had a conversation with him regarding Pharmacy Department policies. Doc. No. 21-1 at PageID 150-51. During that conversation, Jackson gave Leeth a copy of the Master Agreement containing information about the Pharmacy Department's time and attendance policies. *Id.* Jackson also sent Leeth an email with the Pharmacy Department's policy on unscheduled leave attached. Doc. No. 21-2 at PageID 307-11.

**B. CVAMC's Employment and Leave Policies**

CVAMC had three relevant polices that Leeth was required to follow during his employment: (1) the Policy Memorandum No. 05-01 ("Policy Memorandum"); (2) the Master Agreement between the Department of Veterans Affairs and the American Federation of Government Employees ("Master Agreement"); and (3) the Pharmacy Department's Standard Operating Procedures ("SOP"). Doc. No. 21-4 at PageID 712-1056, 1061-64. The VA Handbook contains policies that CVAMC uses regarding disciplinary actions for probationary employees. *Id.* at PageID 1069-71.

The Policy Memorandum is the VA policy governing leave administration that applies to CVAMC employees, unless—and to the extent that—it conflicts with the Master Agreement. *Id.* at PageID 712. The Policy Memorandum states that "[e]mployees must have the appropriate sick leave balance when requesting sick leave for care and bereavement" of family members. *Id.* at PageID 717. If an employee does not have sufficient sick leave to care for a family member, he or she may "request annual leave by submitting a leave request[.]" *Id.* at PageID 714. Although an employee has a right to use accrued annual leave, "approval is at the supervisor's discretion." *Id.* The Policy Memorandum clarifies that "[t]he granting of unplanned or impromptu annual leave is an administrative determination and is based upon current and anticipated workload requirements." *Id.* at PageID 714-15. If an employee lacks sufficient sick and annual leave to miss work for an emergency, he or she may request leave without pay ("LWOP"). *Id.* at PageID 723. However, "[m]anagement may disapprove LWOP based upon current and anticipated workloads" and employees do "not have a right to annual leave without pay[.]" *Id.* Additionally, "[a] request for leave without pay may be denied if an employee's services are required or the employee does not follow prescribed leave procedures." *Id.*

The Master Agreement, although not in conflict with the Policy Memorandum, adds that "[f]or clearly compassionate and appropriate reasons, the Department may increase the stated limits applicable to all forms of leave in accordance with applicable government-wide regulation and law." *Id.* at PageID 927. The Pharmacy Department's SOP supplements—but does not conflict with—the Policy Memorandum and the Master Agreement. *Id.* at PageID 1061-62. Therefore, the language of the Policy Memorandum regarding leave applies to Leeth. *Id.* at PageID 712.

The policy documents also contain procedures for addressing unauthorized absences. *Id.* at PageID 726, 1062. The Policy Memorandum states that, "[a]n employee who absents herself/himself from work without approval or after her/his request for leave is denied, or fails to enter timely request

3

upon return from unplanned leave, may have the absence recorded as AWOL" (absence without leave).  *Id.* at PageID 726.  When an absence is recorded as AWOL, the employees are to be notified in writing.  *Id.*  The SOP also states that "[f]ailure to obtain approval prior to the absence may result in absent without leave (AWOL) status and disciplinary action."  *Id.* at PageID 1062.

The VA Handbook states that the "VA may terminate an employee serving on a probationary or trial period because his/her work performance or conduct fails to demonstrate fitness or qualifications for continued employment."  *Id.* at PageID 1070.  When a supervisor terminates an employee, he or she will be notified "in writing as to why they are being separated and the effective date of the action."  *Id.* at PageID 1071.

### C. Leeth's Alleged Discrimination and Termination

On or around 11:00 P.M. on Sunday, February 23, 2020, Leeth's husband was unexpectedly hospitalized for convulsions.  Doc. No. 21-1 at PageID 161.  Leeth first called the Pharmacy Department's timekeeper on Monday, February 24, 2020 to inform him/her of the situation and seek leave for his upcoming shifts starting Wednesday, February 26, 2020.  *Id.* at PageID 168-69.  Leeth maintains that he called the timekeeper every day he was required to miss work due to his husband's medical emergency: Wednesday, February 26, 2020; Thursday February 27, 2020; Friday, February 28, 2020; Saturday, February 29, 2020; and Sunday, March 1, 2020.  *Id.* at PageID 169.  At the time Leeth first contacted the timekeeper, he had eight hours of sick leave and sixteen hours of annual leave to use.  Doc. No. 21-2 at PageID 327.

Bower, Leeth's direct supervisor, was alerted of Leeth's situation by Wednesday.  Doc. No. 21-1 at PageID 170.  On that day, Bower left a voicemail for Leeth, stating:

> Hey, Keith this is Tracy Bower, I am calling you.  I wanted to let you know if you want to put in for Annual Leave for Thursday and Friday you are more than welcome to.  Uh, if you don't want to return this call on my cell phone.  Call the number in the vault and leave a message and let them know you want to take Annual Leave for the Thursday and Friday or Thursday or whatever days you need there.  So, if you have

4

any questions you can call me back. I'm going to class for the next 2 hours, you can call me back at about noon, thanks.

Doc. No. 21-2 at PageID 319.

Bower asserts that—after he left the voicemail—he had a telephone conversation with Leeth on the same day. Doc. No. 21-5 at PageID 1073. Bower states he told Leeth that "even though annual leave usually requires advance notice, Mr. Leeth would be granted annual leave for whatever sick leave did not cover for Wednesday," Thursday, and Friday. *Id.* Bower also asserts he told Leeth that "[b]ecause the Pharmacy Department lacked sufficient coverage for the weekend[,]" he would not be granted annual leave for Saturday and Sunday. *Id.* Bower affirms that he had a second telephone call with Leeth on Friday, February 28, 2020 during which he reiterated that his leave requests for Saturday and Sunday were not approved. *Id.*

Leeth does not agree with Bower's account of the follow-up calls. Doc. No. 27 at PageID 1172. In his deposition, Leeth states that a follow-up call occurred, but that he could not remember the conversation beyond explaining the emergency to Bower. Doc. No. 21-1 at PageID 170. However—in a later affidavit[1]—Leeth asserts that "during the period of February 24, 2020 through March 1, 2020" Bower failed to advise him that he would not be approved for leave on Saturday and Sunday. Doc. No. 27-1 at PageID 1176. Instead, Leeth interpreted Bower's voicemail as a pre-approval of an unlimited amount of leave. Doc. No. 21-1 at PageID 206.

Leeth also exchanged text messages on Facebook Messenger with Rhonda Tackett Younker, a timekeeper and Pharmacy Technician at CVAMC. Doc. No. 21-2 at PageID 320. On Wednesday, February 26, 2020, Younker texted Leeth: "if something happens and you aren't working on Saturday please let me know cause I am the one that will be working!!!" *Id.* at 320-21. On Thursday, Leeth

---

[1] The Court notes, without deciding, that this affidavit may invoke the "sham affidavit" rule. *See Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 842 (6th Cir. 2021) ("This rule provides that a party cannot create a genuine dispute of material fact with an affidavit that conflicts with the party's earlier testimony about the fact").

5

texted Younker that he was "not going to be able to work at all this weekend" and asked whether he "need[ed] to call the vault[.]" *Id.* at 323. Younker replied the same day, telling Leeth to "please call just to make it official. You can call now I will be in here." *Id.* at 323-24.

Leeth interpreted this text conversation as an offer from Younker to cover his weekend shifts if he could not work them. Doc. No. 21-1 at PageID 192. However, Leeth also acknowledged that even if Younker offered to cover his shifts, an official leave request still had to be placed and approved by a supervisor. *Id.* at 193. He was also aware that Younker was not his supervisor, and that she did not have the authority to approve his weekend leave. *Id.* at 194.

Upon belief that all five of his shifts were covered by leave or by Younker, Leeth did not report for work on Wednesday, Thursday, Friday, Saturday, or Sunday. Doc. No. 21-2 at PageID 327-28. Leeth testified that when he returned to work the next week, he received emails from Bower and Romanello approving his time off for all five days: February 26, 2020 to March 1, 2020. Doc. No. 21-1 at PageID 182-83. However, Leeth did not point to these emails in the record or explain how they showed that his leave was approved. Doc. No. 27 at PageID 1172. Instead, the timesheet in the record indicates that Leeth was approved for one day of sick leave and two days of annual leave, but marked as "AWOL" on Saturday, February 29, 2020 and Sunday, March 1, 2020. Doc. No. 21-2 at PageID 327-28. Additionally, CVAMC's timekeeping system emails show that Leeth's supervisors approved his leave for Wednesday, Thursday, and Friday. Doc. No. 21-4 at PageID 687-88. The system emails do not show that Leeth was granted leave for Saturday, February 29, 2020 or Sunday, March 1, 2020 before he missed those days of work. *Id.* at PageID 686-707.

While neither party directly addresses the issue, the record indicates that on March 2, 2020 at 6:51 A.M.—after Leeth had already missed five days of work—Romanello retroactively approved Leeth's leave request for Saturday, February 29, 2020. *Id.* at 689. The next email, however, shows that Romanello "reverted to pending the leave request" a few minutes later, at 7:07 A.M. *Id.* at 690.

6

After learning that Leeth failed to report to work and was charged AWOL for two days, Jackson recommended termination of Leeth's employment. Doc. No. 21-3 at PageID 671. Jackson asserted that "Leeth was terminated, effective March 22, 2020, during his probationary period because of his AWOL status on Saturday, February 29, 2020, and Sunday, March 1, 2020." *Id.*

On or around March 11, 2020, Jackson held a meeting with Leeth and Richard Homer, Leeth's union representative. Doc. No. 21-1 at PageID 184. During the meeting, Leeth was terminated. *Id.* Leeth testified that Homer told him that he "was being discriminated against based on [his] sexual orientation with how [Jackson] handled himself in that meeting." *Id.* at PageID 202. Additionally, Leeth asserts that a male pharmacist "had a similar situation and [Jackson] approved his time off with no problem." *Id.* at PageID 204. However, Leeth testified that the pharmacist worked in the outpatient pharmacy whereas he worked in the inpatient pharmacy. *Id.* at PageID 235. Additionally, Leeth did not know whether Jackson supervised the pharmacist in any way. *Id.* at 236. Finally, Leeth did not know what type—or length—of leave the pharmacist used. *Id.* at 237-40.

Leeth does not demonstrate any evidence that Jackson directly discriminated against him in any verbal or written communication. Doc. No. 21-1 at PageID 205. Instead, Leeth asserts that Jackson retroactively changed his alleged approved leave for Saturday and Sunday to AWOL after finding out that he was requesting time off to care for his sick husband. Doc. No. 21-1 at PageID 204.

On May 6, 2020, Leeth filed an Equal Employment Opportunity charge to challenge his termination on the basis of disparate treatment. Doc. No. 21-14 at PageID 1134. On January 29, 2021, the Equal Employment Opportunity Commission issued a right-to-sue letter to Leeth. *Id.* at PageID 1138-39. Leeth then filed this Title VII lawsuit based upon that right-to-sue letter. Doc. No. 1.

7

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A) and (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he non-moving party . . . may not rest upon [his or her] mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citations omitted).

Additionally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id.* at 406.

### III. ANALYSIS

Leeth raises one claim: discrimination based on sexual orientation under Title VII of the Civil Rights Act of 1964. Doc. No. 1 at PageID 3. The Secretary is entitled to summary judgment on Leeth's claim for two reasons. First, Leeth does not satisfy his *prima facie* showing of sex discrimination because he does not present evidence of a similarly situated, non-protected employee that was treated more favorably. Second, the Secreatary has demonstrated that CVAMC had a legitimate, non-discriminatory reason for terminating Leeth's employment, and Leeth fails to show that the Secretary's stated reason was pretextual.

Title VII prohibits employers from "discharge[ing] any individual […] because of such individual's […] sex[.]" 42 U.S.C. § 2000e-2(a)(1). Under Title VII, "an employer who fires an individual for being homosexual […] fires that person" because of that individual's sex. *Bostock v. Clayton Cnty., Ga.*, 140 S.Ct. 1731, 1737 (2020). To establish a claim of discrimination under Title VII, a plaintiff may introduce either direct or circumstantial evidence supporting an inference of discrimination. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014). When a claim is based solely on circumstantial evidence of discrimination, Courts must apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Laster*, 746 F.3d at 726. Here, the *McDonnell Douglas* framework applies because Leeth does not present any direct evidence that his employment was terminated because of his sexual orientation. *See* Doc. No. 27; *Laster*, 746 F.3d at 726.

Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of sex discrimination. *Tex. Dept. of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252-53 (1981). If the plaintiff has produced enough evidence that a reasonable jury could conclude a *prima facie* case has been established, the burden of production shifts to the employer to show a legitimate, nondiscriminatory reason for the plaintiff's termination. *Id.* at 253. If the employer produces a

sufficient reason, the burden shifts back to the plaintiff to establish that the proffered reason is a pretext for sex discrimination. *Id.*

Here, the Secretary asserts that Leeth does not satisfy his *prima facie* case of sex discrimination. Doc. No. 22 at PageID 1154. Even if Leeth satisfies his *prima facie* case, the Secretary suggests CVAMC had a legitimate non-discriminatory reason for terminating Leeth and argues that he cannot show that this reasoning was pretextual. *Id.* at PageID 1156-58. While Leeth responds to some of the Secretary's arguments, he asserts that "comparable employee information is not required in this case" and only mentions the word "pretext" once in his court-ordered supplemental brief. *See* Doc. No. 27 at PageID 1173; Doc. No. 30 at PageID 1196. Additionally, Leeth provides no case law supporting his claim and relies primarily on his speculations. *See* Doc. Nos. 27, 30. In his supplemental brief, Leeth fails to cite to the record throughout most of the document. *See* Doc. No. 30. Accordingly, the Court questions whether Leeth has abandoned his sex discrimination claim and waived any argument concerning dismissal of the claim. *Hicks v. Concorde Career Coll.*, 449 Fed. App'x 484, 487 (6th Cir. 2011) (finding that "[t]he district court properly declined to consider the merits of [plaintiff's] claim because [plaintiff] failed to address it in… his response to the summary judgment motion").

Nevertheless, to be careful and thorough, the Court will proceed to discuss the *McDonnell Douglas* framework. Having failed to satisfy his burden of demonstrating a *prima face* case or pretext, Leeth's sex discrimination claim must fail on the merits.

### A. *Prima Facie* Case of Sex Discrimination

First, the Secretary argues that summary judgment is appropriate because Leeth did not establish his *prima facie* case. Doc. No. 22 at PageID 1154. To establish a *prima facie* case of sex discrimination, Leeth must show that: (1) he "is a member of a protected group;" (2) he "was subjected to an adverse employment decision;" (3) he "was qualified for the position;" and (4)

10

"similarly situated non-protected employees were treated more favorably." *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) (internal quotation marks omitted). At this stage of the framework, Leeth's burden is "not onerous" and can be "easily met." *Id.* (internal quotation marks omitted).

The Secretary does not dispute that Leeth is a member of a protected group or that he was subjected to an adverse employment decision by being fired. *See* Doc. No. 22, 29; *Jackson*, 814 F.3d at 776. The Secretary's motion for summary judgment only disputes the fourth prong of Leeth's *prima facie* case. Doc. No. 22 at PageID 1154. However, the Secretary's reply appears to argue that Leeth fails to establish both the third and fourth prongs. Doc. No. 29 at PageID 1182. For purposes of completeness, the Court will address the third and fourth prongs: whether Leeth was qualified for the position and whether a similarly situated, non-protected employee was treated more favorably. *See Jackson*, 814 F.3d at 776.

Viewed in the light most favorable to Leeth, a reasonable finder of fact could conclude that he was qualified for the position at CVAMC. *See id.* Leeth was hired by CVAMC in July 2019 to work in the Nursing Department and continued in that role until January 2020. Doc. No. 21-1 at PageID 118; Doc. No. 21-2 at PageID 330. He interviewed with Bower, Romanell, and Jackson for the Pharmacy Technician position in January 2020. Doc. No. 21-1 at PageID 118-19. After the interview, Leeth was offered the position. Doc. No. 21-1 at PageID 128. Leeth testified that he was given a raise while he was working as a Pharmacy Technician. Doc. No. 21-1 at PageID 135. He was eventually trusted to work on his own after completing two to three weeks of on-the-job training. Doc. No. 21-1 at PageID 146-47. Although the Secretary provides evidence of Leeth's unexcused absences from work, Leeth has created a genuine issue of material fact as to whether his "performance met [his] employer's legitimate expectations at the time of [his] discharge." *See Vincent v. Brewer*

*Co.*, 514 F.3d 489, 495 (6th Cir. 2007). Therefore, Leeth has satisfied the third prong of his *prima facie* case.

Leeth does not, however, satisfy the fourth prong because he does not show that "similarly situated non-protected employees were treated more favorably." *See Jackson*, 814 F.3d at 776. The Sixth Circuit requires plaintiffs to show three elements to demonstrate that employees are similarly situated: (1) the employees "dealt with the same supervisor[;]" (2) the employees were "subject to the same standards[;]" and (3) the employees had "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (internal quotation marks omitted).

Leeth asserts that a male pharmacist "had a similar situation and [Jackson] approved his time off with no problem." Doc. No. 21-1 at PageID 204. However, Leeth did not explain how the pharmacist was similarly situated. *Id.* at PageID 235-41. By Leeth's own account, he and the pharmacist: (1) had different job positions; (2) worked in different sections of the Pharmacy Department; (3) may not have had the same supervisor; and (4) may not have requested the same type of leave. *Id.* at PageID 235-40. Thus, Leeth has not shown evidence of any of the three elements required to demonstrate that a similarly situated employee was treated more favorably. *See Jackson*, 814 F.3d at 776.

Leeth contends that "comparable employee information is not required in this case due to Jackson's subsequent actions and Bowers' false statements."[2] Doc. No. 27 at PageID 1173. While "there may be cases where there is so much evidence of a decision-maker's discriminatory animus

---

[2] Later, in his supplemental brief, Leeth asserts that "[t]here is a strong inference that Bower's August 25, 2020 statement is perjury." Doc. No. 30 at PageID 1193. The Court does not appreciate unsupported allegations of perjury and advises Plaintiff's counsel to avoid conclusory claims that a witness or party has committed a serious crime.

12

that a plaintiff's failure to satisfy the fourth element of the *McDonnell Douglas prima facie* case is not fatal to her claim[,]" Leeth does not present such evidence.[3] *See id.*; *Birch v. Cuyahoga Cnty. Prob. Ct.*, 392 F.3d 151, 167 (6th Cir. 2004) (concluding that an employer's "sexually biased comments, expressed in the context of [the plaintiff's] complaint about what she believed to be discriminatorily low pay" was sufficient to satisfy the plaintiff's *prima facie* burden without demonstrating a similarly situated employee was treated more favorably).

Therefore, Leeth has failed to satisfy his *prima facie* case of sex discrimination. *See Jackson*, 814 F.3d at 776.

### B. Legitimate, Non-Discriminatory Reason

Assuming, *arguendo*, that Leeth had satisfied his *prima facie* showing, the Secretary offered a legitimate, non-discriminatory reason for Leeth's termination. After a plaintiff has established his *prima facie* case of sex discrimination, the burden of production shifts to the employer to offer evidence of a legitimate, non-discriminatory reason for the plaintiff's termination. *Jackson*, 814 F.3d at 778. Here, although Jackson had the discretion to approve Leeth's requests for leave, CVAMC's policy also gave Jackson the option of disapproving leave based on workload requirements. Doc. No. 21-4 at PageID 714, 723. Additionally, CVAMC could terminate Leeth—a probationary employee— if his work performance did not meet its reasonable expectations. Doc. No. 21-4 at PageID 1070. The Secretary asserts that Jackson terminated Leeth because he violated CVAMC policy by failing to work two shifts for which he did not have approved leave. Doc. No. 21-3 at PageID 671; Doc. No. 22 at PageID 1156. Jackson stated that because Leeth did not show up to work on February 29 and March 1, 2020, "CVAMC was forced to pay another employee overtime to cover Mr. Leeth's shifts"

---

[3] Leeth also fails to cite to any cases supporting the proposition that the fourth prong of the *prima facie* case need not be satisfied under these circumstances. *See* Doc. No. 27 at PageID 1173.

13

and "[t]o ensure proper coverage in the Pharmacy Department [and] to meet veteran needs[.]"[4] Therefore, the Secretary has demonstrated a legitimate, non-discriminatory reason for terminating Leeth's employment. *See McLaughlin v. Fifth Third Bank, Inc.*, 772 Fed. App'x 300, 302 (6th Cir. 2019) (affirming a district court's finding that terminating employees based on violating company policy was a legitimate, non-discriminatory reason).

### C. Pretext

Once an employer offers a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to establish that the proffered reason is a pretext for sex discrimination. *Tex. Dept. of Cmty. Affs.*, 450 U.S. at 253. A plaintiff can show pretext in one of three ways: "(1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the employer's actions; or (3) the proffered reason was insufficient to motivate the employer's action." *McLaughlin*, 772 Fed. App'x at 302 (citing *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). Leeth can only rely on methods one or two to show pretext because the third method involves a comparison to non-protected employees, which Leeth does not provide. *See Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 286-87 (6th Cir. 2012); Doc. No. 27 at PageID 1173.

First, Leeth cannot show that the Secretary's proffered reason had no basis in fact. To show that a reason had no basis in fact, a plaintiff must demonstrate that "the proffered bases for [his] discharge" did not actually happen. *Santiago v. Meyer Tool Inc.*, No. 22-3800, 2023 WL 3886405, at *5 (6th Cir. June 8, 2023). In this case, Leeth would have to show that he did not violate CVAMC's leave policy. Leeth maintains that he called in each day that he missed work in order to request leave. Doc. No. 21-1 at PageID 169. In support of this claim, Leeth relies solely on his own testimony,

---

[4] The Court, *sua sponte*, also takes judicial notice that the COVID-19 pandemic was in its early stages at this time, and "[h]ospital administrators nationwide anticipate[d] a wave of patients that could strain their" operations. *See, e.g.,* Pam Belluck & Noah Weiland, *C.D.C. Officials Warn of Coronavirus Outbreaks in the U.S.*, N.Y. TIMES (Feb. 25, 2020), https://www.nytimes.com/2020/02/25/health/coronavirus-us.html.

which is not sufficient evidence to create a genuine issue of material fact for trial. Doc. No. 21-1 at PageID 169; *see Santiago*, 2023 WL 3886405, at *5 (finding that referring only to the plaintiff's own testimony to support the assertion that she always called before missing work does not create a triable issue of fact). Additionally, even if he did call every day to request leave, the record shows that his leave for at least one day was never approved through the appropriate leave process and timekeeping system. Doc. No. 21-4 at PageID 686-707.

Leeth also asserts that he was approved to take unlimited leave. Doc. No. 21-1 at PageID 206. In support of the assertion that he was granted leave for Saturday and Sunday, Leeth points to the voicemail left by Bower and emails from Bower and Romanello. Doc. No. 21-1 at PageID 182-83; Doc. No. 21-2 at PageID 319. However, even in the light most favorable to Leeth, Bower's voicemail only suggests that Leeth could "put in for" leave, not that all leave he requested was going to be approved. Doc. No. 21-2 at PageID 319. Additionally, Leeth points solely to his own deposition testimony to support the assertion that his leave was approved for Sunday, March 1, 2020 and that he received an email confirming the approval. Doc. No. 21-1 at PageID 182-83; Doc. No. 27 at PageID 1172. The CVAMC email records only demonstrate that—after Leeth already missed five days of work—Romanello retroactively approved Leeth's leave request for Saturday, February 29, 2020, but quickly changed this approval to "pending" sixteen minutes later. Doc. No. 21-1 at PageID 189-90. Nevertheless, nothing in the record—besides Leeth's own testimony—supports the assertion that Jackson retroactively changed his leave approval on Saturday and Sunday to AWOL. *See Santiago*, 2023 WL 3886405, at *5 (concluding that plaintiff's own testimony—disputing the testimony of another employee and "related documentary evidence indicating that [the plaintiff] eventually exceeded the hours allotted for her […] leave"—did not "create a triable issue of fact as to whether her policy violations actually occurred"). Thus, Leeth has not shown that the Secretary's proffered reason for his termination had no basis in fact.

15

Second, Leeth cannot show that the Secretary's legitimate, non-discriminatory reason did not actually motivate his termination. Leeth baldly asserts that Jackson retroactively changed his alleged approved leave for Saturday and Sunday to AWOL after finding out that he requested the time off to care for his sick husband. Doc. No. 21-1 at PageID 204. He does not cite to any evidence in the record to support his assertion—beyond his account of a conversation with his union representative and his own personal belief. Doc. No. 21-1 at PageID 202; Doc. No. 27 at PageID 1173. "Such 'conclusory and unsupported allegations, rooted in speculation,' are insufficient to create a genuine dispute of material fact for trial." *Gunn v. Senior Servs. N. Ky.*, 632 Fed. App'x 839, 847 (6th Cir. 2015) (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003)); *see also Chappell v. GTE Prods.*, 803 F.2d 261, 268 (6th Cir. 1986) ("Mere personal beliefs, conjecture and speculation are insufficient to support an inference of […] discrimination").

Moreover, the Sixth Circuit has adopted the "same actor" inference in employment discrimination cases. *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995). Under this doctrine, the Court may "infer a lack of discrimination from the fact that the same individual both hired and fired the employee." *Philbrick v. Holder*, 583 Fed. App'x 478, 488 (6th Cir. 2014). Here, Jackson hired Leeth knowing that Leeth was married to a male. Doc. No. 21-1 at PageID 121; Doc. No. 21-5 at PageID 1072. Jackson—the same supervisor—made the decision to terminate Leeth's employment. Doc. No. 21-3 at PageID 671. Therefore, the "same actor" inference applies in this case, and the Court infers a lack of sex discrimination. *See Buhrmaster*, 61 F.3d at 464.

Thus, Leeth "has not presented evidence upon which a reasonable jury could find that that [the Secretary's] reasons for [his] termination were pretextual[,]" and his claim fails on the merits. *See Santiago*, 2023 WL 3886405, at *8.

16

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Secretary's motion for summary judgment (Doc. No. 22) and **TERMINATES** this case on the docket.

**IT IS SO ORDERED.**

  February 12, 2024                                      s/Michael J. Newman
                                                                          Hon. Michael J. Newman
                                                                          United States District Judge